IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RONNIE LEE JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-0112 |
| | ) | |
| JERRY LESTER, Warden, | ) | Judge Sharp |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Ronnie Lee Johnson, a prisoner in state custody at the West Tennessee State Penitentiary in Henning, Tennessee, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review, and this Court has jurisdiction. 28 U.S.C. § 2241(d). For the reasons set forth herein, the petition will be denied and this matter dismissed.

## I.  PROCEDURAL BACKGROUND

On August 15, 2008, the petitioner was found guilty by a Putnam County jury of possession of more than .5 grams of crack cocaine with intent to sell, a Class B felony, and simple possession of dihydrocodeinone, a Class A misdemeanor. (Jury Verdict Forms, ECF No. 11-1, at 91–94.) The trial court denied Johnson's motion for a new trial (ECF No. 11-1, at 123) and, on December 17, 2008, sentenced him as a multiple offender to 17 years' incarceration on the cocaine-related charge and to 11 months and 29 days on the dihydrocodeinone charge, to be served consecutively to each other and to a 9-year term he was already serving on a prior unrelated conviction. (Judgments, ECF No. 11-1, at 124–25.) Johnson's conviction and sentence were affirmed on direct appeal. *State v. Johnson*, No. M2008-02848-CCA-R3-CD, 2010 WL 565667 (Tenn. Ct. Crim. App. Feb. 18, 2010). He did not file an application for permission to appeal to the Tennessee Supreme Court.

On April 23, 2010, the petitioner filed a lengthy *pro se* post-conviction petition in the state court. (ECF No. 11-11, at 2–28.) Post-conviction counsel was appointed (ECF No. 11-11, at 29) and a brief

amended petition filed. (ECF No. 11-11, at 39–41.) After conducting a hearing, the trial court entered an order denying the petition. (ECF No. 11-11, at 60–67.) That decision was affirmed by the Tennessee Court of Criminal Appeals as well. *State v. Johnson*, No. M2011-00881-CCA-R3-PC, 2012 WL 5377807 (Tenn. Ct. Crim. App. Oct. 29, 2012), *perm. app. denied* (Tenn. March 5, 2013).

Johnson filed his § 2254 petition in this Court sometime between October 15, 2013 (the date the petition was signed, see ECF No. 1, at 22) and October 28, 2013 (the date the prison stamped the envelope). The respondent concedes that the petition is timely. (ECF No. 10, at 2.)

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:

> *State's Proof.* Detective Randy Roland, of the Putnam County Sheriff's Department, testified that he verified that the defendant lived at 22 West Stevens Street and surveilled the residence off and on for four days. During that time, the defendant was at the residence most of the time. Occasionally, the defendant would leave to drive to a parking lot where he would meet with people, make an exchange, and then return to the house. Detective Roland observed between fifty and sixty people entering 22 West Stevens Street. The defendant would open the door for each person, and the majority of those people stayed inside for three to five minutes and then exited. On one occasion, Detective Roland saw a man exit 22 West Stevens Street, enter a car, and light up what Detective Roland recognized as a crack pipe as the man drove away. He further testified that cocaine base is often packaged in plastic baggies and sells for approximately $100 per gram in Putnam County. He said that he makes the decision whether to charge someone with simple possession or with a felony drug charge based on the amount of drugs, the behavior of the suspect, and any paraphernalia such as scales. Based on his experience as a narcotics detective, Detective Roland testified that the traffic in and out of 22 West Stevens Street indicated drug transactions.
>
> On February 23, 2007, Detective Roland and other members of the Putnam County Sheriff's Department searched 22 West Stevens Street. Two adult females and an eleven-month-old baby were inside the residence during the search. Detective Roland testified that the front bedroom of the house contained men's clothing and shoes, "photos of the defendant, [and a] lockbox key that was in his name." In that bedroom, the sheriff's deputies found two bags of a white rock-like substance and a set of digital scales, which had a white residue on them, under the mattress. They also found $1,400 in cash inside a pair of boots, $1,300 in cash in a dresser drawer, and small bags throughout the room. In the living room, they found a wooden box containing twenty white pills. Detective Roland took possession of each item, placing them in separate bags and labeling them for identification. He locked the items in an evidence locker in his office, to which he had the only key. He gave the white rock-like substance, the digital scales, and the pills to Deputy Jeff Cessna for transportation to the Tennessee Bureau of Investigation ("TBI") Crime Lab in Nashville.
>
> On cross-examination, Detective Roland testified that he could not verify whether anyone besides the defendant stayed overnight at 22 West Stevens Street. He did not find any weapons in the residence. Detective Roland said that the defendant had just left the residence with Kelly Holloway when he decided to search the house. He further

stated that no one entered the house until the defendant had returned and given them permission to search the house. Detective Roland testified that they searched the entire house, and to his knowledge, no one lived in the second bedroom. Additionally, the defendant told him that the front bedroom was his. Detective Roland stated that the two adult females present during the search denied having the drugs. The defendant never denied that the drugs were his, but Detective Roland did not specifically discuss the drugs with him because Detective Roland had determined that the drugs belonged to the defendant. Detective Roland confirmed that the defendant was in the back of a police car during the search.

On redirect examination, Detective Roland testified that before the search, the defendant had been inside the residence for several hours before leaving and returned four to five minutes after leaving. He said that the defendant told him that one of the women who was inside the residence during the search was his daughter. Detective Roland had seen the defendant's daughter a few times during the surveillance but had not seen the other woman before that night. He testified that there were no indications that the daughter or the baby lived at the house. Additionally, there was no indication that Kelly Holloway or any other person lived there.

TBI Agent William Stanton, Jr. testified that he analyzed the evidence sent to him by the Putnam County Sheriff's Department in relation to this matter. He testified that the rocklike substance contained 3.8 grams of cocaine base, also known as crack cocaine. He further testified that he analyzed the pills and determined that they were dihydrocodeinone. Additionally, Agent Stanton said that he did not analyze a rock-like substance wrapped in a paper towel, but it weighed 1.8 grams.

Deputy Jeff Cessna testified that he transported evidence in this case to the TBI Crime Lab in Nashville. Deputy Brian Cook testified that he participated in the search of the defendant's residence and found rolls of cash in a pair of boots located in the front bedroom closet. Deputy Tom Bumbalough testified that he found a wooden box containing white pills in the living room of the defendant's residence and did not find a prescription bottle with the defendant's name.

Detective Shane Higgenbotham testified that he assisted Detective Roland in the surveillance of 22 West Stevens Street, beginning on February 19, 2007. Detective Higgenbotham said that he was familiar with the defendant and identified him in the courtroom. He witnessed forty to sixty people entering the residence and staying for three to five minutes. He also participated in the search of the residence. Detective Higgenbotham testified that the defendant did not deny that 22 West Stevens Street was his place of residence. On cross-examination, he said that the defendant was with Ms. Holloway on the night that they searched his house. Detective Higgenbotham was familiar with Ms. Holloway because of her drug-related history with law enforcement. He did not see any women's clothing or purses in the residence.

Donna Dennis testified that as the Customer Service Manager for the City of Cookeville, she had access to the records of everyone who had applied for utility services. She said that the application for service for 22 West Stevens Street was signed by the defendant in December 2006. Ms. Dennis further said that the defendant provided a lease agreement as proof of residence that listed him as the lessee of 22 West Stevens Street.

*Defense Proof.* Officer Ryan Acuff, of the Cookeville Police Department, testified that he responded to a reported burglary at the defendant's residence, 22 West Stevens Street, in January 2007. When he went inside the house, he went to the back bedroom, which he understood to be the defendant's bedroom. On cross-examination, Officer Acuff identified the defendant as the person present at 22 West Stevens Street when he

responded to the call.

Officer Robert Cantwell testified that he was dispatched to the defendant's residence for a vandalism complaint in February 2007. The defendant showed him where someone had kicked in the window of his front door when he would not let that person inside. Officer Cantwell advised the defendant that he could get a criminal summons for vandalism if he so chose. On cross-examination, Officer Cantwell testified that he responded to 22 West Stevens Street. The defendant was the only person present at the residence. To Officer Cantwell's knowledge, no charges were made against anyone in connection to the vandalism.

The defense recalled Detective Randy Roland. Detective Roland testified that he had previously worked as an undercover police officer and made drug buys. He also said that the police often used confidential informants to make drug buys. Detective Roland said that he did not have time to find an appropriate person to use as a confidential informant in this case because the defendant's residence was directly across from a daycare, and he did not want to leave the children in danger.

*State v. Johnson*, 2010 WL 5656677, at *1–3.

On the basis of this evidence, the jury found Johnson guilty of possession of crack cocaine with intent to sell, and simple possession of dihydrocodeinone, as set forth above.

In his direct appeal, the petitioner argued that (1) the evidence was insufficient to convict him; (2) the trial court erred in refusing to order the state to disclose the identity of a confidential informant; (3) the search of Johnson's home violated the Fourth Amendment; and (4) trial counsel (who was the same as appellate counsel), was ineffective for failing to object to the testimony of the state's chemist regarding evidence that had been previously suppressed by the trial court. The Tennessee Court of Appeals rejected all these arguments and affirmed the conviction and sentence. *State v. Johnson*, No. M2008-02848-CCA-R3-CD, 2010 WL 565667 (Tenn. Ct. Crim. App. Feb. 18, 2010).

In his initial *pro se* post-conviction petition in the state court, Johnson raised dozens of issues. (ECF No. 11-11. at 8–26.) On appeal, he argued only that the post-conviction court erred in denying his motion for recusal; and that his trial counsel

erred by: (1) raising an ineffective assistance of counsel claim on direct appeal; (2) failing to object to videotape and witness testimony presented by the State at trial, which depicted or referenced allegedly suppressed evidence; (3) failing to inform him that an enhancement notice had been filed by the State, and failing to confer with him before sentencing; (4) failing to call his daughter as a trial witness; and (5) failing to file an application for permission to appeal his direct appeal to the Tennessee Supreme Court.

*Johnson v. State*, No. M2011-00881-CCA-R3-PC, 2012 WL5377808, at *6 (Tenn. Ct. Crim. App. Oct. 29, 2012). (*See also* ECF No. 11-13, at 10–14 (Post-Conviction App. Br. at 6–10, discussion of the issues).)

The state appellate court affirmed the denial of post-conviction relief.

## III.    ISSUES PRESENTED FOR REVIEW

The Court construes Johnson's petition and the attached memorandum to raise the following claims for relief:

A. That the petitioner's trial attorneys and his appellate counsel were ineffective in that they:

(1) failed to object to the admission of a video taken during the search of the petitioner's house that showed an unanalyzed rock-like substance which allegedly had been the subject of a motion to suppress that the trial court had granted;

(2) failed to contact or subpoena the petitioner's daughter to testify as a witness at trial;

(3) failed to advise the petitioner of a sentencing enhancement filed by the state or to consult with the petitioner about the sentencing process;

(4) failed to include a claim of ineffective assistance of counsel in his motion for a new trial but nonetheless included it in his direct appeal brief;

(5) failed to file an application for permission to appeal to the Tennessee Supreme Court.

(6) failed to investigate all cognizable theories presented by the petitioner;

(7) failed to contact or subpoena the petitioner's landlady;

(8) failed to withdraw and allow new counsel to take over after trial, who could have pursued an ineffective-assistance claim in the motion for new trial and the direct appeal

(9) failed to move to continue trial when he discovered that a witness for the state, Detective Randy Roland, had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and

(10) failed to object to the prosecutor's reference to excluded evidence in closing argument.

B. That the trial court erred in allowing the jury to be shown evidence that had previously been suppressed.

## IV.    STANDARD OF REVIEW

### A.    Defaulted or Unexhausted Claims

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which

promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re*

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

*Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### B. Standard of Review of Fully Exhausted Claims

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's

clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

. . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the Court will turn to the examination of the claims raised in Johnson's petition for habeas relief.

## V.   ANALYSIS AND DISCUSSION

### A.   Exhausted Claims: Ineffective Assistance of Counsel

As set forth above, the petitioner has raised what the Court construes as ten separate claims of ineffective assistance of counsel, only five of which were fully exhausted. The five that were properly raised and considered by the state court during the post-conviction appeal are that trial counsel (1) failed to object to the admission of a video taken during the search of the petitioner's house that showed rocks of what appeared to be crack cocaine which allegedly had been suppressed by the trial court; (2) failed to contact or subpoena the petitioner's daughter to testify as a witness at trial; (3) failed to advise the petitioner of a sentencing enhancement filed by the state or to consult with the petitioner about the sentencing process; (4) failed to include a claim of ineffective assistance of counsel in his motion for a new trial but nonetheless included it in his direct appeal brief; and (5) failed to file an application for permission to appeal to the Tennessee Supreme Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in Harrington,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing Johnson's claims for ineffective assistance of counsel, the Tennessee Court of Criminal Appeals correctly articulated and discussed at some length the *Strickland* standard. *See Johnson v. State*, 2012 WL 5377807, at *7 (noting that, in *Strickland*, the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must show "that counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (quoting *Strickland*, 466 U.S at 688, 694)). Then, after having articulated that standard, the court of criminal appeals addressed each of the petitioner's ineffective-assistance claims in some detail and concluded that, with respect to each claim, the petitioner had failed either to prove that he had been prejudiced by counsel's performance or that counsel's

performance was actually deficient. This Court has examined the entire underlying record, including the trial and post-conviction hearing transcripts and the trial and appellate courts' rulings on the petitioner's ineffective-assistance claims. Based on all this information, the Court concludes that the petitioner has not shown the state courts' rulings were "contrary to, or involved an unreasonable application of, clearly established Federal law," or were "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Accordingly, Johnson is not entitled to relief on the basis of these claims.

### B. Procedurally Defaulted Claims

The petitioner raises five ineffective-assistance claims in his present petition that were not presented in his state appeal: (1) that trial counsel failed to investigate all cognizable theories presented by the petitioner; (2) that trial counsel failed to contact or subpoena the petitioner's landlady; (3) that counsel failed to withdraw and allow new counsel to take over after trial, who could have pursued an ineffective-assistance claim in the motion for new trial and the direct appeal without an actual conflict of interest; (4) that counsel failed to move to continue trial when he discovered that a witness for the state, Detective Randy Roland, had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)*;* and (5) that trial counsel failed to object to the prosecutor's reference to the excluded evidence (the purported crack cocaine found during the traffic stop) in closing argument.

Several of these claims were raised by the petitioner in his *pro se* post-conviction petition in the state court, but they were not addressed in the appeal. As discussed above, before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust the remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In order to fully exhaust a claim for purposes of federal habeas review, it must be presented to the highest state court available. In Tennessee, that means a claim must have been presented to the Tennessee Court of Criminal Appeals to be considered fully exhausted. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

Further, exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971),

*cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995). In the Sixth Circuit, the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). The five ineffective-assistance claims and the petitioner's claim that the trial court erred in allowing the jury to see evidence that had been suppressed were never "fully and fairly" presented to the state courts.

At this point, however, the petitioner is barred from presenting these claims in the state courts by Tennessee's one-petition rule governing the filing of post-conviction petitions. Tenn. Code Ann. § 40-30-102(c). He does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a)[2] permits him to re-open his post-conviction petition in the Tennessee courts. These claims are therefore considered to be exhausted (because no further state review is available) but procedurally defaulted (because no state-court review was ever conducted). The petitioner has not demonstrated cause for the procedural default or actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Because the claims are procedurally defaulted, the Court does not reach their substantive merits. The petitioner is not entitled to relief on the basis of these claims.

---

[2] This provision permits a petitioner to file a motion in the state trial court to reopen his first post-conviction petition, but only if:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

(2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-117(a).

**VI.    CONCLUSION**

For the reasons set forth herein, Ronnie Lee Johnson's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge